Wisconsin Employment Relations Board, Appellant, vs.
Plankinton Packing Company and another, Respondents.

*June 9—July 12, 1949.*

288

For the appellant there were briefs by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondent Plankinton Packing Company there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Richard S. Gibbs* and *Edward H. Borgelt* of counsel, all of Milwaukee, and oral argument by *Mr. Gibbs.*

*Max Raskin,* attorney, and *Irvin B. Charne* of counsel, both of Milwaukee, for the respondent United Packing House Workers of America, C. I. O., Local No. 50.

*David Beznor* of Milwaukee, for William Stokes.

ROSENBERRY, C. J.  Upon this appeal two principal questions are raised: (1) Does the evidence sustain the findings of the board as the trial court held?  (2) Was the Employment Relations Board without jurisdiction to hear and determine the controversy?

The order of the board required the employer to reinstate William Stokes, an employee of the Plankinton Company up to the time that he was discharged by the company.  The

Employment Relations Board, hereinafter referred to as the "board," held that the union committed an unfair labor practice by coercing and intimidating William Stokes in the exercise of his right to refrain from membership in such organization and by coercing, intimidating, and inducing the respondent employer to interfere with the right of the complainant Stokes to refrain from membership in such organization and by inducing respondent employer to discharge Stokes from its employment. That the Packing Company committed unfair labor practice by interfering with the right of William Stokes to refrain from membership in the respondent union by discharging said Stokes at the request of and pursuant to the coercive tactics of the respondent union. The findings generally are attacked on the ground that they are not supported by the evidence. No useful purpose would be served by setting out the testimony, which we have carefully examined and from which examination we conclude that there is ample substantial evidence to sustain the findings of the board.

Only one serious question is raised. Sec. 111.07 (4), Stats., among other things provides:

". . . Final orders may dismiss the charges . . . and require him [the person complained of] to take such affirmative action, including reinstatement of *employees* with or without pay, as the board may deem proper. . . ."

On the hearing Stokes testified as follows:

"So far as I know I have a steady job now. Offhand I think I made 90¢ an hour. I started for 82¢. When I left Plankinton my rate was 82½¢ an hour. I receive overtime where I work now after eight hours in any day. I receive overtime for the hours I work after thirty-two. I work some weeks less and some more than forty hours."

This appears to be all the evidence in the record as to Stokes' employment by E. R. Godfrey & Sons Company.

Stokes had been employed by the Plankinton Company for seventeen years. It is the contention of Plankinton Packing

Company and the union that at the time the order of the commission was entered under the provisions of sec. 111.02 (3), Stats., Stokes was not an employee.

Sec. 111.02 (3), Stats., provides:

"The term 'employee' shall include any person, . . . working for another for hire in the state of Wisconsin in a non-executive or nonsupervisory capacity, and shall not be limited to the employees of a particular employer unless the context clearly indicates otherwise; and shall include any individual whose work has ceased solely as a consequence of or in connection with any current labor dispute or because of any unfair labor practice on the part of an employer and . . . (c) who has not obtained regular and substantially equivalent employment elsewhere, . . ."

It is the contention of the union and the Packing Company that the evidence shows that Stokes has obtained regular and substantially equivalent employment, in other words that Stokes is within an exception, and therefore the introductory part of the section does not operate to continue him as an employee.

The Packing Company and the union are claiming the benefit of an exception and the burden is upon them to establish the facts necessary to bring Stokes within the exception. Admittedly he was a discharged employee of the company. The company and the union claim he has ceased to be an employee, therefore the burden is on them to establish the fact. The contention assumes that the fact that the wages are more than substantially equivalent to the wages which Stokes received at the Packing Company is sufficient to sustain this burden. Obviously factors other than wages are to be considered. The trial court held this was not sufficient.

The trial court said:

"The record, however, does not disclose whether Stokes was unemployed for any period of time after his discharge by the company, and up to the time that he obtained employment elsewhere. The fact that complainant instituted and

prosecuted this proceeding is persuasive that complainant does not consider his new employment the equivalent of his former job with the company. The additional fact that by reason of his discharge the complainant lost certain security arising out of his seventeen years of employment with the company was a further fact which the board had a right to consider in determining whether Stokes has 'obtained regular and substantially equivalent employment elsewhere.' "

The court held that the finding of the board in this respect could not be disturbed. We see no grounds upon which the determination of the trial court can be reversed.

The chief contention of the company and the union is that the order of the board should be set aside for the reason that the state board is without jurisdiction or power to make said order. The trial court found that Plankinton Company had admitted that it is engaged in commerce within the meaning of the National Labor Relations Act. The court further states that from Vol. 5, Decisions and Orders of the National Labor Relations Board, p. 813, it appears that the board found that the Plankinton Company is the wholly owned subsidiary of Swift & Company.

The trial court also refers to other facts and then states:

"There is nothing in the record in the instant case, nor has my attention been called to any decision, to the effect that the order of the National War Labor Board of February 20, 1945, has ceased to be effective. It therefore appears to me that under the facts in this case the Wisconsin board is without jurisdiction to make the order of reinstatement."

In so concluding the trial court overlooked the fact that the War Labor Board and the effect of all its directives was wholly terminated by Presidential order No. 9672, December 31, 1945, 1 CFR, 1946 Supp., p. 82. As already stated the state board's order was entered on December 6, 1946, almost a year after the War Labor Board went out of existence.

Every argument made by the company and the union in support of their contention that the state board was without jurisdiction is answered adversely to them by the opinion of this court in *Wisconsin E. R. Board v. Algoma P. & V. Co.* (1948), 252 Wis. 549, 32 N. W. (2d) 417, affirmed (1949), 336 U. S. 301, 69 Sup. Ct. 584, 93 L. Ed. 000. No useful purpose would be served by reiterating here what was so well said there.

*By the Court.*—The judgment of the circuit court is reversed with directions to enter judgment confirming and enforcing the provisions of the order of the Wisconsin Employment Relations Board as prayed for in its petition.